IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| BERNARD NELSON, | ) | CIVIL NO. 05-00374 JMS/LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART |
| NATIONAL CAR RENTAL SYSTEM, | ) | DEFENDANT'S MOTION FOR |
| INC., AND DOE DEFENDANTS 1-10, | ) | SUMMARY JUDGMENT |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Defendant National Car Rental System, Inc. ("National")[1] has moved for summary judgment as to each of Plaintiff Bernard Nelson's claims. National contends that Nelson is not entitled to recover under Hawaii's Whistleblower Protection Act, that he is not entitled to pursue a separate cause of action for termination in violation of public policy, and that he has not alleged or produced facts that would substantiate a claim for intentional infliction of emotional distress ("IIED"). For the reasons stated herein, the court DENIES Nelson's motion with respect to Nelson's Whitleblower and public policy claims and GRANTS National's motion with respect to Nelson's IIED claim.

---

[1] National Car Rental is owned and operated by Vanguard and Vanguard is defending this lawsuit.

I. BACKGROUND

Nelson worked as a mechanic at National for approximately ten years before he was terminated on February 25, 2005. Nelson alleges that he was fired for reporting safety check violations to the State vehicle inspection office, whereas National contends that he was fired for insubordinate conduct.

The essential facts of this case are largely undisputed. On February 11, 2005, Nelson received a written notice from National stating that employees were to report to work at 7:00 a.m., clock out for a half hour lunch break, and leave work at 3:30 p.m. Prior to receiving this notice, Nelson had understood that his work hours were flexible such that he could arrive at work early, skip his lunch break, and leave early. On the day after he received the notice of National's policy, Nelson failed to clock out for a lunch break. On February 17, he clocked in at 6:00 a.m., allegedly in order to allow a garbage truck to enter the facility. Ronald Matsuura, a supervisor at National, approached Nelson shortly after 6:00 a.m. on February 17 and asked why Nelson had clocked in early. Nelson did not respond. Later that morning, Nelson informed Matsuura that he would be contacting the State vehicle inspection office to report safety check violations at National. Nelson did not inform Matsuura of the reasons for his actions.

Approximately thirty minutes later, Nelson made his report to the State vehicle inspection office.

Nelson contends that National's procedures for performing vehicle safety checks were in violation of State regulations. National does not dispute the substance of Nelson's report to the vehicle inspection office, but it contends that National's procedures were standard within the rental car industry and did not violate State regulations.

The parties differ in their accounts of Nelson's motive in reporting the alleged safety check violations to the State vehicle inspection office. National contends that Nelson was angry over National's work schedule and that he threatened management with a report to the vehicle inspection office. According to National, Nelson specifically stated that he was making his report in retaliation for National's refusal to accommodate him with flexible work hours. Nelson, on the other hand, denies making any such statement. Nelson contends that he simply informed Matsuura that he would be filing a report but that he never threatened National or tried to use his report to leverage a more flexible work schedule.

On the same day he made his report, Nelson met with a union representative and a general manager to discuss: (1) his failure to clock out for

lunch on February 12, (2) his early arrival on February 17, and (3) his alleged threats on February 17 regarding the safety check violation report.  Nelson was given a five-day suspension on February 17 and was subsequently fired on February 25.  The parties do not dispute that Nelson was fired at least in part because of conduct in reporting alleged safety check violations to the State vehicle inspection office.

Nelson contends that he suffered severe emotional distress as a result of his termination.  He does not, however, allege that National's behavior, apart from its decision to fire him, was outrageous.  He has not sought treatment for his alleged emotional distress and has not been diagnosed with any psychological or psychiatric condition.

## II.  LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986).  The burden initially lies with the

moving party to show that there is no genuine issue of material fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987). Nevertheless, "summary judgment is mandated if the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999) (quoting *Celotex*, 477 U.S. at 322).

## III. ANALYSIS

**A.   Whistleblower**

Hawaii law protects employees who report the potentially illegal conduct of their employers. The Whistleblowers' Protection Act provides:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:
> (1) The employee, or a person acting on behalf of the employee, reports or is about to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of:
> (A) A law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States; or
> (B) A contract executed by the State, a political subdivision of the State, or the United States, unless the employee knows that the report is false; or

5

>> (2) An employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

Hawaii Revised Statutes ("HRS") § 378-62.

On its face, the statute requires only that an employee either report, or be about to report, a violation of the law and that the employer take some adverse action against the employee as a result. The statute does not contain an explicit good faith requirement. The sole restriction relating to the employee's state of mind is that an employee is not entitled to protection for a report he or she knows to be false. In interpreting HRS § 378-62, the Hawaii Supreme Court has not identified any elements to the cause of action in addition to those clearly contained in the statute.

Nelson has produced evidence in support of each of the elements listed in the statute. Nelson reported to the State vehicle safety inspection office that National was not complying with certain safety inspection regulations. National acknowledges that Nelson was fired, at least in part, because of his report. Nelson alleges that he gave accurate information to the vehicle safety inspection office and National does not contend otherwise. Nonetheless, National argues that it is entitled to summary judgment either because Nelson did not engage in the *type* of activity protected by the statute or because his report did not

6

cause National to terminate his employment.  National's theory is that Nelson reported safety violations in retaliation for National's unwillingness to accommodate his scheduling demands; National asserts that it legitimately terminated Nelson for his insubordinate and retaliatory conduct and that Nelson's motivation in making his report prohibits him from recovering under the Whistleblower Protection Act.

      Relying on judicial interpretations of other state whistleblower statutes, National urges the court to read an additional requirement that employees act with an altruistic motivation into Hawaii's law.  National principally relies on cases construing Michigan's whistleblower statute to require that employees act, at least in part, with a motive to inform and benefit the public.[2]  Courts in Michigan have read the whistleblower statute to prohibit recovery when employees use their knowledge of alleged employer violations to threaten or extort from their employers.  *See Wolcott v. Champion Int'l Corp.*, 691 F. Supp. 1052 (W.D. Mich. 1987) (granting summary judgment for employer where employee participated in alleged environmental violations and used knowledge of violations to engage in

---

[2] Michigan's whistleblower statute is nearly identical to Hawaii's.  Like the Hawaii statute, it withholds protection from employees who make knowingly false reports about their employers but it does not expressly require that an employee act with a purpose to benefit the public.  *Compare* HRS § 378-62 and M.C.L.A. § 15.361 *et seq.*

7

extortion); *Shallal v. Catholic Social Services of Wayne County*, 566 N.W. 2d 571 (Mich. 1997) (granting summary judgment for employer where employee never reported violation to authorities and only threatened to make report after she learned that her job was in jeopardy for reasons unrelated to the alleged violation).

HRS § 378-62 lays out the elements for bringing a whistleblower suit in a straightforward and unambiguous manner. The only "good faith" requirement in the statute is its denial of protection to employees who knowingly make false reports about their employers. Nothing in the statute requires employees to present evidence of a genuine desire to further the public good over and above the required good faith belief in the accuracy of their report. This is not to say, however, that the court reads the Hawaii Whistleblower Protection Act to shield employees who attempt to use the statute to threaten or blackmail their employers. An employee who engages in extortion or other malfeasance might fall outside the protection of the statute.

The court need not decide this issue for purposes of the instant motion, however. National alleges that it fired Nelson because of his alleged threats to report safety violations in retaliation for National's refusal to give him his desired work schedule. In a sworn declaration, Nelson denies threatening anyone at National or using his reports of safety violations to leverage a more

8

desirable work schedule.  Taking the facts in the light most favorable to Nelson, a reasonable jury could credit Nelson's representations and conclude that he made the report simply to inform the State vehicle inspection office of what he perceived to be safety check violations. Because there is a genuine issue of fact regarding Nelson's motivation in reporting the alleged safety inspection violations, the court need not decide at this stage whether, and to what extent, a corrupt motive precludes an employee from recovering under Hawaii's Whistleblower Protection Act.

**B.     Public Policy**

National also seeks summary judgment on Nelson's claim that National terminated him in violation of public policy.  National urges the court to find that Nelson's public policy claim is redundant of his statutory claim and therefore should be stricken.  Nelson contends that, under both the plain language of the Whistleblower Protection Act and Hawaii Supreme Court precedent construing the statute, he is entitled to pursue both statutory and common law claims for the alleged wrongful termination.  The court agrees with Nelson.

Nelson contends that National terminated him in violation of public policy when it fired him because of his report concerning alleged safety check violations.  He relies on *Parnar v. Americana Hotels, Inc.*, 65 Haw. 370, 652 P.2d

625 (1982), in which the Hawaii Supreme Court recognized an exception to the at-will employment doctrine whereby a common law tort remedy is available when an employer terminates an employee in violation of a clear public policy.  Nelson contends that National's alleged decision to terminate him for reporting to the vehicle inspection office violated public policy insofar as § 378-62 clearly expresses a public policy in favor of protecting the jobs of employees who report their employers' illegal conduct.  Generally, however, when a public policy is already embodied in a statute and the statute itself provides a remedy, as § 378-62 does for whistleblowers, courts should not permit further remedies under a duplicative common law wrongful termination claim.  *Ross v. Stouffer Hotel Co.*, 76 Haw. 454, 879 P.2d 1037 (1994).

        Notwithstanding this general principle, the Hawaii Legislature specifically preserved common law remedies when it adopted the Whistleblower Protection Act.  The statute provides:

> The rights created herein shall not be construed to limit the development of the common law nor to preempt the common law rights and remedies on the subject matter of discharges which are contrary to public policy.  In the event of a conflict between the terms and provisions of this part and any other law on the subject the more beneficial provisions favoring the employee shall prevail.

HRS § 378-69.  Relying on this statutory language, the Hawaii Supreme Court has expressly recognized that employee whistleblowers may bring a *Parnar* wrongful termination claim even though their rights as whistleblowers are also protected under § 378-62.  *Ross*, 76 Haw. at 463-464, 879 P.2d at 1046-47.  Thus, National's argument that Nelson cannot maintain a claim for termination in violation of public policy because it is "duplicative" of his whistleblower claim is without merit.

**C.     Punitive Damages**

National also seeks a ruling from the court that Nelson cannot pursue punitive damages at trial.  National argued in its brief that punitive damages are not available under HRS § 378-62.  Nelson does not dispute that punitive damages are not available under the Whistleblower Protection Act; instead, he seeks punitive damages pursuant to his common law wrongful termination claim.  At the June 26, 2006 hearing, counsel for National attempted to argue that punitive damages are not appropriate as a matter of law on the facts of this case and therefore Nelson should be precluded from seeking punitive damages on both his common law and statutory claims.  National did not raise or argue this point in its briefing; consequently, the court does not consider the argument in this order.

The court agrees with both parties that punitive damages are not available under HRS § 378-62.  As National has not moved to exclude punitive damages with respect to Nelson's common law wrongful termination claim, Nelson may seek punitive damages pursuant to that claim to the extent allowable under Hawaii law.

### D.     IIED

Nelson contends that he suffered severe emotional distress as a result of his termination.  National argues that Nelson has not alleged outrageous conduct sufficient to maintain a claim for IIED.  The court agrees with National.

The Hawaii Supreme Court has adopted the approach to IIED set out in the Restatement (Second) of Torts, §46.  A plaintiff must prove: "1) that the act allegedly causing the harm was intentional or reckless,  2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another." *Hac v. Univ. of Hawaii*, 102 Haw. 92, 106-7, 73 P.3d 46, 60-61 (2003).

A decision to terminate an employee, even an unlawful one, generally does not by itself constitute outrageous or extreme conduct sufficient to sustain a claim for IIED.  *See*, *e.g.*, *Polson v. Davis*, 635 F. Supp. 1130, 1151 (D. Kan. 1986) (noting that termination "happens every day" and is not, in and of itself,

outrageous for purposes of stating a claim for IIED); *Southwestern Bell Mobile Sys. v. Franco*, 971 S.W. 2d 52, 54 (Tex. 1998) ("[T]he mere fact of termination of employment, even if the termination is wrongful, is not legally sufficient evidence that the employer's conduct was extreme and outrageous... ."). In the instant case, Nelson contends that he was terminated for an improper reason, but he alleges no further facts demonstrating that National's conduct was outrageous. In response to National's motion for summary judgment on his IIED claim, Nelson has come forward with no specific facts showing that National acted outrageously. Thus, Nelson has failed to meet his burden on summary judgment; a reasonable jury could not conclude from the mere fact that Nelson was fired that National acted outrageously for purposes of IIED. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (noting that the non-moving party may not rely on the mere allegations in the pleadings and instead must set forth "specific facts showing that there is a genuine issue for trial").

## IV. CONCLUSION

For the reasons stated herein, National's motion for summary judgment is DENIED as to Nelson's Whistleblower Protection Act claim and public policy claim and GRANTED as to his IIED claim.

IT IS SO ORDERED.

13

DATED: Honolulu, Hawaii, June 30, 2006.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Nelson v. National Car Rental System, Inc.*, Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment, Civ. No. 05-00374 JMS/LEK